JAMES D. SALLAH, not individually,
and solely in his capacity as court-appointed
receiver,

    Plaintiff,

v.

LEO MILLER, ESTATE OF
CURTIS TANNEY, TRIDENT
TITLE, LLC, REALTY PREMIER
INC., LIGIA TANNEY &
PNC BANK, N.A.,

    Defendants.
_____/

## ORDER DENYING DEFENDANT PNC BANK'S MOTION TO DISMISS

This cause is before the Court on Defendant PNC Bank's Motion to Dismiss [DE 67]. The motion has been fully briefed. For the reasons set forth below, the motion is denied.

This case concerns an alleged Ponzi scheme. DE 59 at 2. Plaintiff, James Sallah, has been appointed by this Court as a receiver to administer a receivership entity that was created to protect investors who were adversely affected by the Ponzi scheme. *Id.* During the course of the scheme, two checks were deposited into PNC Bank, a Defendant in this case. PNC Bank, in the motion before the Court, has moved to have the claims against it (Count II, Count V, and Count XII) dismissed from this case.

PNC argues that it cannot be liable for the check deposits as a matter of law. The claims against PNC arise under the Florida Uniform Fraudulent Transfer Act ("FUFTA").[1] FUFTA

---

[1] Count XII is a claim for conversion which is addressed separately, *infra*.

prohibits fraudulent transfers of property when:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation ...

Fla. Stat. § 726.105. PNC argues that it cannot be held liable for the check deposits for two reasons. First, there was no transfer of property. Second, even if there was a transfer of property, that transfer was not to PNC. Each is discussed in turn.

With respect to whether a transfer of property (or funds) occurred, PNC concedes that the definition of transfer under FUFTA is broad. *Nationsbank, N.A. v. Coastal Utils., Inc.*, 814 So. 2d 1227, 1230 (Fla. Dist. Ct. App. 2002). Indeed, a transfer is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or interest in an asset." Fla. Stat. § 726.102(14). The transfer at issue here, however, is the depositing of a check into a bank account, and the question before the Court is whether such a deposit amounts to a transfer of funds. PNC relies upon a single case, *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316 (M.D. Fla. 2015), to argue that no transfer of funds occurred.

In *Wiand*, which was decided on summary judgment, the district court considered transfers of funds between accounts controlled by the same account-holder. *Id.* at 1327. The district court reasoned that those facts did not amount to a "transfer" under FUFTA because a transfer only occurred when an asset had been "disposed of or parted with" and, because the account-holder was merely moving funds between his own accounts, no transfer had occurred. The facts of this case are different. Here, Plaintiff alleges that funds moved through three

2

separate entities before they were deposited via check with PNC and, moreover, those funds moved between accounts controlled by different individuals and entities. *See* DE 75 at 4-5; DE 59 at 6-11. Thus, based upon the facts alleged in the complaint the Court finds the reasoning in cases such as *Wiand* unpersuasive until such time as information outside of the complaint can be used to evaluate the transfers in this case.

PNC also argues that even if funds were transferred in this case, those funds were not transferred to PNC. PNC does cite to case law that holds that "[w]hen banks receive money for the sole purpose of depositing into a customer's account . . . the bank never actually has control of the funds." *Super Vision Int'l, Inc. v Mega Int'l Comm. Bank Co., Ltd.*, 534 F. Supp. 2d 1326, 1344 (S.D. Fla. 2008). Plaintiff's argument in response, however, is nuanced. Plaintiff alleges that the checks in this case were not endorsed but, notwithstanding this lack of an endorsement, (i) PNC permitted deposit of the checks and (ii) PNC stamped onto the back of the checks "Absence of Endorsement Guaranteed." DE 59 at 7-10. In light of the lack of an endorsement (and PNC's stamping), Plaintiff cites to authority for the proposition that the lack of an endorsement here means that PNC's acceptance of the checks amounted to a conversion of the check because an unendorsed check amounts to a forged instrument. Anderson, U.C.C. § 3-419:208 (3d ed.); *see also Wilton Manors Nat. Bank v. Adobe Brick & Supply Co.*, 232 So. 2d 29 (Fla. Dist. Ct. App. 1970). PNC responds by (i) arguing Plaintiff's authority is outdated law and (ii) citing to section 674.205, Florida Statutes.

Section 674.205 states that when a bank receives an unendorsed item from its customer it becomes a holder and, if the bank satisfies the requirements of section 673.3021, the bank becomes a holder in due course (which would relieve PNC of liability in this case). The

3

problem, Plaintiff points out, is that the requirements for a holder in due course in section 673.3021 are fact intensive and require PNC to establish good faith. An analysis of good faith typically involves questions of material fact. *See Any Kind Checks Cashed, Inc. v. Talcott*, 830 So. 2d 160, 165-66 (Fla. Dist. Ct. App. 2002); *Thompson v. First Union Nat. Bank*, 643 So. 2d 1179, 1180 (Fla. Dist. Ct. App. 1994). Thus, even if Plaintiff's authority is outdated law, the Court is not prepared to conclude on a motion to dismiss that PNC qualifies as a holder in due course by virtue of its exercise of good faith; PNC's exercise of good faith cannot be inferred from the complaint when the complaint is viewed in the light most favorable to Plaintiff. PNC replies to the above by arguing that it is not relying upon a good faith analysis, but instead upon commentary in the Uniform Commercial Code which states that whether a bank provides an endorsement is "immaterial." Fla. Stat. § 674.205.

In conclusion, the burden on the motion to dismiss before the Court is PNC's. The Court does not find, at this time, that PNC has met its burden; nor will the Court dismiss Plaintiff's claims based upon a single phrase in U.C.C. commentary without an established record to guide its decision.[2] The Court will examine these matters on a developed record, just as the district court did in *Wiand*, including, without limitation, a record on the transactions in this case, the circumstances and ownership surrounding those transactions, the circumstances and procedures surrounding PNC's stamping of "Absence of Endorsement Guaranteed" on an unendorsed check, and additional facts on how the checks were deposited in this case. To be clear, the Court does not reject any legal argument brought by PNC in this Order.[3] PNC is free to renew any argument

---

[2] With respect to PNC's argument premised upon U.C.C. commentary, that argument was not briefed to the level necessary for this Court to grant PNC's motion to dismiss.
[3] With respect to PNC's argument that Plaintiff's claim for conversion cannot be brought as a claim in the alternative, the Court concludes, at this time, that Plaintiff may bring such a claim in the alternative.

it raised in its Motion in a future motion for summary judgment. For all of the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that PNC Bank's Motion to Dismiss [DE 67] is **DENIED**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 10th day of April, 2017.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record